UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Billups,
    Petitioner

    vs                                    Case No. 1:01cv731
                                              (Dlott, J.; Perelman, M.J.)

Pat Hurley,[1]
    Respondent

## REPORT AND RECOMMENDATION

      In this habeas corpus action filed pro se pursuant to 28 U.S.C. § 2254 by an inmate in state custody at the Ross Correctional Institution in Chillicothe, petitioner apparently seeks restoration of good-time credit that was lost when he was found guilty of a prison disciplinary violation by the prison's Rules Infraction Board (RIB) on October 23, 2000. (*See* Doc. 1). Petitioner asserts his eligibility for parole release was continued until January 2004 due to the loss in good-time credit. (*Id.,* p.1, ¶3). This matter is before the Court on the petition, respondent's return of writ, and petitioner's traverse, as supplemented. (Docs. 1, 8, 9, 21).

### Factual and Procedural Background

      Petitioner is in state custody as a result of his convictions by the Franklin County, Ohio, Court of Common Pleas in 1990 for aggravated robbery with a firearm specification (3 counts), kidnapping with a firearm specification (3 counts),

---

[1]Respondent informed the Court that Pat Hurley is now the warden of the Ross Correctional Institution where petitioner is incarcerated. (*See* Doc. 20 at n.1). Because Pat Hurley is the individual who now has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

aggravated burglary with a firearm specification (1 count), receiving stolen property (1 count), carrying a concealed weapon (1 count) and in 1991 for aggravated robbery with a firearm specification. (*See* Doc. 8, Exs. C, D). Petitioner was sentenced in December 1990 to a concurrent seven (7) to twenty-five (25) year term of imprisonment for the aggravated robbery, kidnapping and aggravated burglary charges. (Doc. 8, Ex. C). Petitioner was also sentenced to three (3) years of actual incarceration for the firearm specification, and one and one-half (1 ½) years each for receiving stolen property and carrying a concealed weapon to be served concurrently with each other and with the longer sentences imposed. (*Id.*). On February 12, 1991, petitioner was sentenced to seven (7) to twenty-five (25) years for the aggravated robbery to be served consecutive to the prior seven to twenty-five year sentences. (Doc. 8, Ex. D).

On October 16, 2000, correctional officer Austin issued a conduct report charging petitioner with a Class II, Rule 19 assault violation. (Doc. 8, Ex. E). In the conduct report, which was served on petitioner on October 19, 2000, officer Austin reported the following facts in support of the prison disciplinary charge:

> . . . while working B-Block, I officer Austin responded to a signal 3 in L-2. Once I arrived Lt. Gainey was with this inmate who was resisting him. I then placed my hands on his left arm to help gain control of him. This inmate then became very aggressive and turned and attempted to head butt me in the face. I then placed this inmate into the ice machine were [sic] he continued to resist. This inmate then was placed on the ground where leg irons were placed on him. This inmate then calmed down and was escorted to the infirmary to be checked out. No PR24 or chemical mace, or striking blows were used.

(*Id.*). On October 18, 2000, the conduct report was referred to the Rules Infraction Board. (*Id.*, Ex. F). Petitioner requested that Lts. Quinn and Gainey and correctional officer Austin appear as witnesses. (Doc. 8, Exs. I, J; Doc. 20, RIB Hearing Cassette). He also requested that inmates Hiles and Dalton appear, but they refused. (Doc. 20, RIB Hearing Cassette; Doc. 8, Ex. H).

The hearing before the RIB on the prison disciplinary charge was held on October 23, 1999. (Doc. 20, RIB Hearing Cassette). Petitioner pled not guilty. (Doc. 8, Ex. K). All three witnesses testified that petitioner attempted to head butt

officer Austin. (Doc. 20, RIB Hearing Cassette; Doc. 8, Exs. L, M, N). Correctional officer Austin testified that he put petitioner in the ice machine to try to get control of him. (Doc. 20, RIB Hearing Cassette). He testified that he and Lt. Gainey were involved in this incident, not six others. (*Id.*). Lt. Gainey stated that he did not know how many officers were involved. (*Id.*). Petitioner testified that nine officers were holding him. He stated that Officer Austin grabbed the back of his head and slammed it into the ice machine and that if he had not arched his back and turned his head, his face would have been "busted." (*Id.*). He denied trying to head butt Officer Austin. (*Id.*).

The RIB found petitioner guilty of the Class II, Rule 19, assault charge. In its written decision, the RIB summarized the incident, as follows:

> RIB believes inmate Billups 211903 did knowingly attempt to cause physical harm by attempting to strike officer M. Austin with a head butt. Conduct report substantiates the cited charge.

(Doc. 8, Ex. P). The RIB gave the following reasons for its decision:

> RIB does not accept or believe inmate's statement that he did not attempt to head butt officer Austin. Inmate Billups did state he jerked around. Conduct report clearly indicates that Billups did attempt to head butt officer M. Austin. Lts. Gainey, Quinn had stated that they observed Billups attempt to head butt Off. M. Austin.

(*Id.*). The penalty imposed for the prison disciplinary rule violation was ten (10) days in disciplinary control followed by local control and a recommendation of a loss of nine (9) months in good-time credit. (*Id.*).

Petitioner initially appealed the RIB's decision to the managing officer. (Doc. 8, Ex. R). In his appeal, petitioner asserted that he was denied staff assistance, that the conduct report failed to cite the section of the Ohio Revised Code pertaining to assault, the witnesses were not separated, and that he was overcharged. (*Id.*). He maintained that he was "jerking around from rough handling" and did not "strike or attempt to strike anyone." (*Id.*). The managing officer affirmed the disposition of the RIB. (Doc. 8, Ex. S). Petitioner further appealed to Reginald Wilkinson, the Director of the Ohio Department of Rehabilitation and Correction. (Doc. 20, Ex. 4). Petitioner argued that the

decision of the managing officer was incorrect for the following reasons:

> The conduct report I received did not list the ORC statute for which Rule 19 I was being charged with. I requested staff assistance before RIB due to being charged with a felony, to reasearch [sic] the charge and affirmative defenses. Staff assistance was denied. RIB gave no reason for the denial, nor was any reason for the denial stated on record.
>
> This case #179653 was heard the same time as case #179654. All witnesses from both cases were present in the RIB room as I was excluded. All witnesses remained for the RIB room during both cases. All witnesses were present as each other testified. There was no separation of witnesses. I was not informed of the exact ORC statute I was charged with until the day of the RIB hearing. I was prejudicially denied staff assistance.
>
> I was denied three (3) c/o witnesses who stated I did not try to head butt anyone.
>
> As part of the penalty, RIB denied my good time for January - October 2000. I have already received my good time for these months. RIB is without jurisdiction to take away my good time for these months.
>
> There was approximately nine (9) c/o's on top of me pulling pushing and kicking me while I was in handcuffs, bellychains and leg irons. I was thrashing around, yes. But I did not headbutt or try to headbutt anyone.

(*Id.*).

By letter addressed to petitioner dated March 1, 2001, Mr. Wilkinson denied petitioner's appeal. (Doc. 20, Ex. 5). The letter provided in pertinent part:

> A careful review of the procedural records was conducted by my legal staff. Please be advised that:

4

>   (1) You were validly charged with the proper rule infraction.
>
>   (2) There was no prejudicial violation of procedural rights under the rules of the Administrative Code.
>
>   (3) There was some factual evidence in the record to support the decision.
>
>   (4) The penalty assessed was authorized or appropriate.

(*Id.*).

On October 22, 2001, petitioner filed the instant petition for writ of habeas corpus. (Doc. 1). He alleges the following grounds for relief, which are quoted verbatim from the petition:

>   **Ground One:** Petitioner was denied staff assistance.
>
>   Supporting facts: Petitioner was charged with a Class 2 Rule 19 violation (Assault). Petitioner was denied staff assistance without cause, nor reason stated on the record. In violation of the Ohio Administrative Code (O.A.C.) 5120-9-7(I)(4)(B).
>
>   **Ground Two:** Petitioner was denied witnesses.
>
>   Supporting facts: Petitioner was denied witnesses at the Rules Infraction Board hearing without cause nor reason stated on the record. In violation of O.A.C. 5120-9-7(I)(1).
>
>   **Ground Three:** Petitioner had no complete, nor 24hr. notice of the charge.
>
>   Supporting facts: The conduct report simply stated assault as the charge. The conduct report did not specify which statute of the Ohio Code (O.R.C), Petitioner was being charged with. The R.I.B. then changed the charge to O.R.C. #2903.13, but still did not list which subsection of this statue petitioner was being charged with. Petitioner

therefore did not have any complete, nor 24hr notice of what he was being charged with.

**Ground Four:** The R.I.B. had no jurisdiction to try a felony under Ohio Law.

Supporting facts: Petitioner was charged with a Class 2 Rule 19 (Assault), a felony under Ohio Law.  Only Ohio Courts can try a felony under Ohio Law.  Petitioner was not afforded Miranda Rights, denied an attorney, the standard of evidence in Ohio for a felony is "beyond reasonable doubt".  Only The Ohio Courts of Common Pleas can try a felony and interpret the Ohio Revised Code.

(*Id.*, pp. 5-6).

Respondent has filed a return of writ, in which he contends that grounds two, three and four are waived because petitioner failed to raise them in his administrative appeals and that all grounds for relief lack merit. (Doc. 8)

## OPINION

### I. Petitioner has not waived his claims asserted as grounds two, three and four by failing to present them in his administrative appeals.

In his return of writ, respondent argues that the claims asserted as grounds two, three and four were not contained in petitioner's administrative appeals. (*See* Doc. 8 at 6, 8-9).  In his traverse, petitioner contests respondent's assertion, arguing that in his appeal to the Director, a copy of which was not included with the return of writ, petitioner presented the same grounds raised in the petition. (Doc. 9 at 1). When respondent submitted a copy of that Notice of Disciplinary Appeal, it appears that the grounds for relief asserted by petitioner in the instant petition were raised in that appeal, albeit with significantly less clarity.  (*See* Doc. 20, Ex. 4).

Respondent has not provided any other basis for finding the claims procedurally defaulted nor has he argued that petitioner has failed to exhaust his

state remedies.[2]  Accordingly, this Court will consider the merits of the petition.

## II. Petitioner is not entitled to habeas corpus relief with respect to his first claim that he was denied staff assistance.

As his first ground for relief petitioner alleges that he was denied staff assistance to prepare a defense to the assault charge.  To the extent that petitioner relies solely on an alleged violation of the Ohio Administrative Code, his claim is not cognizable on habeas corpus review. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.), *cert. denied,* 488 U.S. 866 (1988).

The writ of habeas corpus is the appropriate remedy for petitioner to pursue in challenging the loss of his good-time credits on due process grounds.  *See, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 487 (1973); *Blackshear v. Hatfield,* 25 Fed.Appx. 408, No. 01-3437, 2002 WL 104650 (6th Cir. Jan. 24, 2002); *Smith v. Corrections Corp. of America,* 5 Fed.Appx. 443, 444-45, No. 00-5521, 2001 WL 223873 (6th Cir. Feb. 28, 2001).

Under well-established Supreme Court precedent, it is clear that where the State has created the right to good time for prisoners, the loss of good-time credit as punishment for prison disciplinary offenses is a deprivation of liberty protected by federal constitutional due process.  *Wolff v. McDonnell,* 418 U.S. 539, 557

---

[2]Under *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973), a prisoner ordinarily has to exhaust his state court remedies before bringing a federal habeas corpus action for restoration of good time credits.  Although the United States Court of Appeals for the Sixth Circuit has indicated in an unpublished decision that the appropriate remedy is a state petition for a writ of habeas corpus, *see Mallory v. Baker*, No. 89-4122, 1991 WL 54881, at **1 (6th Cir. April 12, 1991), the Ohio Supreme Court has held since then that habeas corpus relief is not available for restoration of good time credits when a prisoner is not entitled to immediate release from confinement, as opposed to earlier consideration of release on parole, *Hanes v. Haviland,* 755 N.E.2d 898, 899 (Ohio 2001).   Because petitioner does not contend that he is entitled to outright release, a state court habeas corpus remedy would not be available to him. For that reason, this Court does not require the petitioner to exhaust.  *Cf. Teagle v. Champion,* 21 Fed.Appx. 790, 792, 2001 WL 1117097 at **2 (10th Cir. Sept. 24, 2001) and cases cited therein.

(1974); *see also Superintendent, Massachusetts Correctional Instit. v. Hill,* 472 U.S. 445, 453 (1985). The requirements of due process are flexible, however, and depend on a balancing of interests affected by the relevant government action. *Hill,* 472 U.S. at 454. Prison disciplinary hearings are not criminal prosecutions, and therefore the "full panoply of rights" accorded criminal defendants does not apply. *Ponte v. Real,* 471 U.S. 491, 495 (1985) (quoting *Wolff,* 418 U.S. at 556). Although the Supreme Court has recognized that the inmate has a "strong interest" in assuring that the loss of good-time credits, which may extend the length of confinement in prison, "is not imposed arbitrarily," *see, e.g., Hill,* 472 U.S. at 454, and *Wolff,* 418 U.S. at 561, the Court in *Wolff* held that even the minimal due process protections enunciated in *Morrissey v. Brewer,* 408 U.S. 471 (1972), and its progeny, for parole or probation revocations are not required in prison disciplinary proceedings. *Wolff,* 418 U.S. at 561-62. The Court reasoned:

> . . . .[I]t is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison.
>
> Revocation of parole may deprive the parolee of only conditional liberty, but it nevertheless "inflicts a 'grievous loss' on the parolee and often on others." . . . Simply put, revocation proceedings determine whether the parolee will be free or in prison, a matter of obvious great moment to him. For the prison inmate, the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored. Even if not restored, it cannot be said with certainty that the actual date of parole will be affected; and if parole occurs, the extension of the maximum term resulting from loss of good time may affect only the termination of parole, and it may not even do that.

*Id.* at 560-61 (citation omitted).

In *Wolff,* the Supreme Court further ruled that an inmate's liberty interest in

good-time credits must be balanced against the "very different stake the State has in the structure and content of the prison disciplinary hearing," which occurs "in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Id.* at 561; *see also Hill,* 472 U.S. at 454. In identifying the safeguards required by due process in the "distinctive setting of a prison," the Supreme Court "has recognized the legitimate institutional needs of assuring the safety of inmates and [prison staff], avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation," *Hill,* 472 U.S. at 454-55 (and Supreme Court cases cited therein), where for some prisoners, "it may be essential that discipline be swift and sure," *Wolff,* 418 U.S. at 563.

Beginning with *Wolff,* the Supreme Court established the following minimum requirements of due process to be afforded prisoners in disciplinary proceedings: (1) written notice of the disciplinary charges at least twenty-four hours before the hearing; (2) an opportunity to call witnesses and present documentary evidence when it is not "unduly hazardous to institutional safety or correctional goals;" and (3) a written statement by the factfinder of the evidence relied on and reasons for the disciplinary action. *Wolff,* 418 U.S. at 563-67; *see also Hill,* 472 U.S. at 454. In addition, the findings of the prison disciplinary board must be supported by "some evidence" in the record. *Hill,* 472 U.S. at 454-56.

Although the United States Supreme Court declined to hold that inmates have a right to counsel in disciplinary proceedings, the Court indicated:

> Where an illiterate inmate is involved . . . or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

*Wolff,* 418 U.S. at 569-570; *see Hewitt v. Helms,* 459 U.S. 460, 465 n.3 (1983). Ordinarily, inmates do not have a due process right to staff or inmate assistance in a disciplinary proceeding. *Walters v. Guilfoyle,* 68 Fed.Appx. 939, 940-941, 2003 WL 21470080, at **2 (10th Cir. June 26, 2003), *cert. denied,* 2004 WL 47036 (U.S. Jan. 12, 2004) (No. 03-7061); *Horne v. Coughlin,* 155 F.3d 26, 30-31 (2nd Cir.

1998), *aff'd on reh'g*, 178 F.3d 603 (2nd Cir.), *amended by* 191 F.3d 244 (2nd Cir.), *cert. denied,* 528 U.S. 1052 (1999).

In this case, the hearing officer determined that petitioner did not require staff assistance in preparing his answer to the charge against him. (Doc. 8, Ex. H). At the RIB hearing, petitioner contended that he requested staff assistance to better understand the charge and its legal elements. (Doc. 20, RIB Hearing Cassette). In his traverse, petitioner contends that he sought staff assistance because he was in segregation. As a result, he argues that he did not have access to the library to research the charge which he describes as complex and was also unable to obtain the names of the prison guards present at the alleged assault. (Doc. 9 at 1-2; Doc. 20, RIB Hearing Cassette).

There is no assertion that petitioner is illiterate. Petitioner's pleadings in this case and his statements and questions at the RIB hearing demonstrate that he was able to understand the charges against him. The issue confronting the RIB was simply whether petitioner knowingly attempted to hit officer Austin by headbutting him or whether his action was merely accidental. This was not a complex issue. *Cf. Griffin v. Fairman,* No. 91-2951, 1993 WL 438613 at **3 (7th Cir. Oct. 27, 1993) (whether or not petitioner stabbed fellow inmate was not complex issue requiring lay advocate).

Petitioner's claim that he had difficulty identifying the other guards present at the incident is not substantiated by the record. When asked at the RIB hearing whether officers Gainey, Quinn and Austin and inmates Hiles and Dalton were all the witnesses petitioner requested, petitioner responded "correct." (Doc. 20, RIB Hearing Cassette). There is no evidence in the administrative record that petitioner expressed any difficulty in identifying additional guards who were involved in the incident before the RIB hearing.

Accordingly, petitioner is not entitled to habeas corpus relief with respect to his first ground in his petition, asserting the denial of staff assistance to prepare for his disciplinary hearing.

### III. Petitioner is not entitled to habeas corpus relief with respect to his second claim that he was denied witnesses.

As his second ground for relief, petitioner contends that he was denied

witnesses at his RIB hearing. To the extent that petitioner alleges that this denial violated the Ohio Administrative Code, his claim is one grounded in state law and therefore non-cognizable on habeas corpus review. To the extent that petitioner claims a violation of due process based on the denial of witnesses, there is no evidence in the record to substantiate his claim. At the RIB hearing he indicated that officers Austin, Quinn and Gainey and inmates Hiles and Dalton were the witnesses he desired to call. (Doc. 20, RIB Hearing Cassette). In addition, the record includes documents representing petitioner's requests for Lt. Quinn and Lt. Gainey and inmates Hiles and Dalton to appear as witnesses. (Doc. 8, Exs. J, K, H). Inmates Hiles and Dalton refused to appear. (Doc. 20, RIB Hearing Cassette). Despite petitioner's assertion in his appeal to Director Wilkinson that he was "denied three (3) c/o witnesses who stated I did not try to headbutt anyone"[3] (Doc. 20, Ex. 4), there is no evidence on the record that petitioner requested additional witnesses nor that any such requests by petitioner were denied. *Cf. Steele v. Farley,* 46 F.3d 1134 (table), No. 94-1308, 1995 WL 41317 (7th Cir. Jan. 31, 1995) (unpublished) (holding that petitioner could not claim he was denied the opportunity to call witnesses on his behalf at a prison disciplinary hearing when he himself failed to request the presence of witnesses, even though he argued he did not make such a request because he viewed it as an exercise in futility). Moreover, Officer Austin testified that there were no other officers involved in the incident. (*Id.*).

Accordingly, petitioner has not demonstrated that he is entitled to habeas corpus relief with respect to his second ground for relief asserting the denial of witnesses at his RIB hearing.

### IV. Petitioner is not entitled to habeas corpus relief with respect to his third claim that he was denied complete and timely notice.

As his third ground for relief, petitioner contends that he did not receive proper notice in this case because the written notice he received failed to specify

---

[3] There is no evidence on the record that there are three correctional officers who would have testified that petitioner did not attempt to head butt Officer Austin, as petitioner claims. When petitioner requested that Officers Gainey and Quinn testify on his behalf, he also asserted that they would testify that he had not attempted to head butt Officer Austin. (*See* Doc. 8, Exs. J, K). In fact, these officers testified to the contrary. (*See id.*, Ex. L, M; Doc. 20, RIB Hearing Cassette).

the section in the Ohio Revised Code for the assault offense and moreover, when the section was provided to him at the hearing, no subsection was indicated. It is undisputed that, in accordance with *Wolff,* petitioner received written notice of the disciplinary charge of a Class II, Rule 19, "assault" violation five days before the October 23, 2000 disciplinary hearing. (Doc. 8, Ex. E; Doc. 20, RIB Hearing Cassette). There is no question that the notice was timely under *Wolff*, and in any event it appears that petitioner's waived the 24 hour notice requirement.  (*See* Doc. 8, Ex. H). Although the statutory section for assault appears on the notice in this Court's record, the record is unclear as to whether it was on the notice at the time that the notice was served on petitioner. (*See* Doc. 8, Ex. E).  At the RIB hearing, the Chairperson appears to state that he added the citation to the Ohio Revised Code at a later date.  (Doc. 20, RIB Hearing Cassette).  There is also some indication that, regardless, petitioner knew the citation before the hearing because he said that he requested the Ohio Revised Code from the prison library.  (*Id.*).

Part of the function of notice is to give the charged party a chance to marshal the facts and prepare a defense and to clarify the issues to be considered.  *Wolff,* 418 U.S. at 564 (citing *In re Gault,* 387 U.S. 1, 33-34 & n.54 (1967)).  The inmate must have notice of the facts upon which the charges are based so that he can prepare his defense.  *See Robinson v. Anderson,* 5 Fed.Appx 535, 538, 2001 WL 252924, at **2 (7th Cir. March 12, 2001) (citing *Rasheed-Bey v. Duckworth,* 969 F.2d 357, 362 (7th Cir. 1992)), *cert. denied,* 534 U.S. 861 (2001).  The record shows that petitioner was notified of the underlying factual basis of the charge through the conduct report so that he could prepare a defense to the assault charge.  The report written by Officer Austin  indicated , in pertinent part:

> I then placed my hands on his left arm to help gain control of him. This inmate then became very aggressive and turned and attempted to head butt me in the face.

(Doc. 8, Ex.  E).  The report further noted the date of the incident and that the conduct  constituted a violation of Class II, Rule 19, specifically, assault. (*Id.*). Petitioner mounted a defense in this case which was simply that he did not intend to head butt Officer Austin.  He testified that he was merely thrashing around and turned his head in an attempt to avoid injury to himself when Officer Austin "slammed" him into the ice machine. (Doc. 20, RIB Hearing Cassette).  The notice petitioner received therefore fulfilled the function of giving petitioner all the information he needed to prepare his defense. *Cf. Higgason v. Hanks*, 42

Fed.Appx. 876, 879, 2002 WL 1732969, at **2 (7th Cir. July 25, 2002) (prison disciplinary committee's change in charge from charge indicated in notice prisoner received did not violate due process because notice provided all the factual information needed to prepare defense); *Holt v. Caspari,* 961 F.2d 1370, 1373 (8th Cir.) (same), *cert. denied,* 506 U.S. 865 (1992). The alleged absence of a citation to the assault statute or the proper statutory subsection is irrelevant because petitioner was given notice of the factual allegations supporting the assault charge. *Cf. Robinson,* 5 Fed.Appx. at 538, 2001 WL 252924, at **2 (Failure of conduct report to cite to specific statutory section or failure of prison to provide prisoner with copy of statute until 17 hours before hearing did not violate due process when report described conduct underlying charge and cited adult disciplinary policy procedures code number underlying violation). Moreover, there is no indication in *Wolf* that the Supreme Court requires citation to the relevant state statute in the notice and petitioner provides no authority of any kind that notice must include such citation.

Accordingly, petitioner is not entitled to relief with respect to his third claim of improper notice of the charge supporting the rules infraction.

### V. Petitioner is not entitled to habeas corpus relief with respect to his fourth claim that the RIB lacked jurisdiction.

As his fourth ground for relief, petitioner alleges that the RIB had no jurisdiction to try him for a felony offense. He argues that the role of adjudicating felony cases is reserved for the state courts with all the attendant procedural safeguards, including the giving of the Miranda warnings, the appointment of counsel and the standard of proof beyond a reasonable doubt to support the conviction.

The state General Assembly conferred authority upon the Department of Rehabilitation and Correction to punish inmates for the violation of institutional rules. *See State v. Powell,* No. 98CA2593, 1999 WL 615381, at *3 (Ohio Ct. App. Aug. 10, 1999); Ohio Admin. Code § 5120-9-07 (K)(6). The sanctions involved do not increase the length of the inmate's sentence, but have the purpose of maintaining order and discipline. *Id.* The fact that the behavior at issue also constitutes criminal conduct does not transform the sanction into a criminal penalty. *Powell,* 1999 WL 615381, at *4. The Supreme Court has held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *Wolff,*

418 U.S. at 556. Based on this statement, the Sixth Circuit has emphasized that the "[r]evocation of good time credits is not comparable to a criminal conviction." *Hensley v. Wilson,* 850 F.2d 269, 277 (6th Cir. 1988). When the state brings a disciplinary proceeding against an inmate for a particular offense, it may later prosecute the inmate for the same offense without violating the principles of Double Jeopardy. *State v. Keller,* 369 N.E.2d 798 (Ohio 1976); *State v. Walton,* No. 03CA2716, 2003 WL 22880250, at *4 (Ohio Ct. App. Dec. 4, 2003); *Powell,* 1999 WL 615381, at *3-*4. It is only in the latter criminal prosecution that the procedural safeguards that petitioner lists come into play.

Accordingly, the RIB did have the authority to administratively sanction petitioner on the basis of a rule violation. The due process safeguards associated with a criminal prosecution were not required because petitioner was not tried and sentenced criminally. Petitioner is therefore not entitled to habeas corpus relief with respect to his fourth ground for relief.

In conclusion, petitioner is not entitled to federal habeas corpus relief based on his claims alleged herein challenging the prison disciplinary proceedings that resulted in the loss of nine months in good-time credit.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's claims alleged in Grounds one through four, because, for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this federal habeas corpus proceeding.[4] *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v.*

---

[4]Because this Court's adjudication of petitioner's grounds for relief does not involve the denial or dismissal of any such claims on procedural grounds, the two-part test enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

*McDaniel,* 529 U.S. 473, 483-84 (2000) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

      3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: February 2, 2004            S/David S. Perelman
                                                       David S. Perelman
                                                       United States Magistrate Judge

hr

J:\ROSENBEH\2254(2003)\01-731goodtime.wpd

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

---

David Billups,
    Petitioner

vs                                          Case No. 1:01cv731
                                               (Dlott, J.; Perelman, M.J.)

Pat Hurley,
    Respondent

---

## NOTICE

    Attached hereto is a Report and Recommendation issued by the Honorable David S. Perelman, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).